John L. CONNOLLY et al., Plaintiffs,

v.

PENSION BENEFIT GUARANTY COR-
PORATION, a non-profit corporation es-
tablished within the Department of La-
bor of the United States of America,
Defendant.

No. CV 75–2037–DWW.

United States District Court,
C. D. California.

Feb. 12, 1976.

Wayne Jett, Los Angeles, Cal., for plain-
tiff.

Henry Rose, Gen. Counsel, Barbara S.
Gutmann, Staff Atty., Pension Benefit
Guar. Corp., Washington, D.C., for defend-
ant.

## ORDER GRANTING SUMMARY JUDGMENT

DAVID W. WILLIAMS, District Judge.

The Operating Engineers Pension Trust
is a joint labor-management trust created
in conformance with § 302(c)(5) of the La-
bor-Management Relations Act of 1947, as
amended in 1959 (29 U.S.C. § 186(c)(5). It
was created in 1960 by a written agreement
to which several contractors associations
and home builders associations were signa-
tories as employers and the international
union of operating engineers, local union
No. 12, as the organization representing the
employees. The individual plaintiffs are
trustees of the trust who have the power to
administer the Pension Fund and to admin-
ister and maintain the Pension Plan which
is the subject of the trust. The purpose of
the trust is to create a pension fund to
which a number of employers make contri-
butions and from which employees may
draw benefits when they reach a stated age
of retirement.

Congress has concerned itself over the
years with the problem of employee pension

funds which have terminated with financial shortages resulting in an inability of many employees to receive expected benefits upon retirement. A recent Congressional effort to bring about a cure for this problem has resulted in the enactment of the Employee Retirement Income Security Act of 1974 (ERISA). Generally, this act seeks to protect the well-being and security of the millions of employees and their dependents who are affected by benefit plans. It seeks to set safeguards for the operation of plans and to establish standards for the administration of pensions in order to minimize terminations of plans and losses to beneficiaries. Section 4002 of the Act establishes within the Department of Labor a corporate body to be known as the Pension Benefit Guaranty Corporation and its purpose is to encourage the continuation and maintenance of voluntary private pension plans so as to provide for timely and uninterrupted payment of benefits to participants. Section 4005 of the Act establishes four revolving funds which are intended to serve as insurance against the failure of the particular types of pension funds which this part of ERISA is designed to cover. The corporation is empowered to prescribe insurance premium rates which it assesses against certain employers to guarantee that the pension funds created by those employers will not suffer short-fall. In the event of a termination of a pension plan of this type, the employer could be held liable for shortages in the fund up to 30% of the net worth of the employer's business. 29 U.S.C. § 1362(a) and (b). Not all types of pension plans are intended to be covered under the insurance provisions of ERISA. Section 4021(b) of the Act provides as follows:

"(b) This section does not apply to any plan—(1) which is an individual account plan, as defined in paragraph (34) of section 1002 of this title."

Paragraph (34) of Section 3 of the Act provides as follows:

"The term 'individual account plan' or 'defined contribution plan' means a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account."

Also, Section 4021(c)(1) of the Act provides as follows:

"For purposes of subsection (b)(1) of this section, the term 'individual account plan' does not include a plan under which a fixed benefit is promised if the employer or his representative participated in the determination of that benefit."

Plaintiff trustees administer a pension fund for the benefit of employees within the building industry. Defendant Pension Benefit Guaranty Corporation has taken the position that the type of pension administered by plaintiff trustees is covered by the insurance provisions of ERISA and the corporation compelled plaintiff trustees to pay a premium of $12,043 into its guaranty fund. The plaintiffs contend that their pension fund comes within the exceptions set forth in paragraph (34) of Section 3 of the Act and that they are not covered by the insurance provisions. If plaintiffs' fund is not included within the exceptions just noted, the trustees would also be limited by provisions of ERISA as to the manner in which they could administer the fund over which they are trustees. Additionally, employers who contribute to plaintiffs' fund would be subject to the liability provisions of ERISA in the event of a termination of the plan.

In short, plaintiffs contend that its plan is an "individual account plan" or "defined contribution plan" as referred to in 29 U.S.C. § 1002(34) while the defendant corporation contends that plaintiffs' plan is a "defined benefit plan" as defined in Section 1002(35) and is therefore covered. Plaintiffs' trustees communicated their objections to the defendant corporation upon being required to pay premiums into the corporation's Guaranty Fund, but defendants legal staff concluded that the Operating Engineers Pension Trust is a Defined Benefit Plan for the purposes of Section

4021(b)(1) because plaintiffs' method of computing a participant's pension benefit appeared to be a formula based on service and therefore within the class of plans called defined benefit plans rather than an individual account plan. In this litigation, which seeks to have this Court determine whether plaintiffs' plan comes within the exceptions of Section 4021(b), the defendant urges that since it is the agency charged with enforcing ERISA, its determination of coverage should be given more weight than that reached by plaintiff trustees. *Griggs v. Duke Power Co.,* 401 U.S. 424, 434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

### AGREEMENT ESTABLISHING THE OPERATING ENGINEER'S PENSION TRUST

The 1960 agreement which established the trust administered by plaintiffs (hereinafter called the "Trust Agreement") provided that each collective bargaining agreement between the union and the employers would bind the employers to abide by the Trust Agreement and to pay a stated amount into the trust with respect to each hour worked by each employee covered by the collective bargaining agreement. Article II, Section 7 of the Trust Agreement provides as follows:

"Neither the Employers nor any Signatory Association, or officer, agent, employee or committee member of the Employers or any Signatory Association, shall be liable to make Contributions to the Fund or be under any other liability to the Fund or with respect to the Pension Plan, except to the extent that he or it may be an Individual Employer required to make Contributions to the Fund with respect to his or its own individual or joint venture operations, or to the extent he or it may incur liability as a Trustee as hereinafter provided. Except as provided in Article III hereof, the liability of any Individual Employer to the Fund, or with respect to the Pension Plan, shall be limited to the payments required by the Collective Bargaining Agreements with respect to his or its individual or joint venture operations, and in no event shall he or it be liable or responsible for any portion of the Contributions due from other Individual Employers or with respect to the operations of such Individual Employers. The Individual Employers shall not be required to make any further payments or Contributions to the cost of operations of the Fund or of the Pension Plan, except as may be hereinafter provided in the Collective Bargaining Agreements."

Article VII, Section 4 of the Plan provides as follows:

"This Pension Plan has been adopted on the basis of an actuarial calculation which has established, to the extent possible, that the contributions will, if continued, be sufficient to maintain the Plan on a permanent basis. However, it is recognized that the benefits provided by this Pension Plan can be paid only to the extent that the Plan has available adequate resources for those payments. No Individual Employer has any liability, directly or indirectly to provide the benefits established by this Plan beyond the obligation of the Individual Employer to make contributions as stipulated in any Collective Bargaining Agreement. In the event that at any time the Pension Fund does not have sufficient assets to permit continued payments under this Pension Plan, nothing contained in this Pension Plan and the Trust Agreement shall be construed as obligating any Individual Employer to make benefit payments or contributions (other than the contributions for which the Individual Employer may be obligated by any Collective Bargaining Agreement) in order to provide for the benefits established by the Pension Plan. Likewise, there shall be no liability upon the Board of Trustees, individually or collectively, or upon the Employers, Signatory Association, Individual Employer, or Union to provide the benefits established by this Plan if the Pension Fund does not have the assets to make such benefit payments."

Article VIII, Section 2 of the Plan provides:

"This Plan has been adopted on the basis of an actuarial estimate which has estab-

lished (to the fullest extent possible) that the income and accruals of the Fund will be fully sufficient to support this benefit plan on a permanent basis. However, it is recognized as possible that in the future the income or the liabilities of the Fund may be substantially different from those previously anticipated. It is understood that this Pension Plan can be fulfilled only to the extent that the Fund has assets available from which to make payments. Consequently, the Board of Trustees may have prepared annually an Annual Actuarial Evaluation of the Fund and shall take the actuarial status of the Fund into account in determining amendment or modification of this Pension Plan."

## FORMULA FOR FIXING PENSION AMOUNT

The monthly amount of the pension payable to a participant who is eligible for a pension in plaintiffs' plan is determined by multiplying the numbers of his respective Prior Service Credits and Pension Credits accumulated by the appropriate Pension Factor. The Plan provides for some participants to be entitled to Prior Service Credits. It also provides for certain participants to receive Pension Credits pursuant to a prescribed formula. The Pension Factor used to determine the benefit entitlement of participants is fixed from time to time. In setting the Pension Factor, the trustees take into account the investment income, gains and losses, expenses, any forfeitures by participants, the mortality experience of the Plan and the actual anticipated employer contributions and delinquencies.

## EMPLOYER CONTRIBUTIONS

Under the Pension Trust created by its signatories in 1960 the various employers would enter into collective bargaining agreements from time to time with the union. As a part of the terms of that agreement the employer obligated himself to make certain contributions into the trust fund for each of his employees, measured by the number of hours worked and any Prior Service Credits or Pension Credits to which the employee would be entitled. The amount the employer is obligated to contribute to the fund may change from time to time. This comes about because the trustees of the Plan are authorized annually to have prepared an actuarial evaluation of the fund which shall consider the actuarial status of the fund and this is taken into account in determining which amendments or modifications shall be made to the Pension Plan. If it appears from the actuarial report that the fund is in peril, the trustees have the power at a given period to compel such additional contributions into the fund from the employers as should preserve the integrity of the fund.

By its terms as quoted hereinbefore, the Plan assures the employer that his sole obligation to the fund is to pay such contributions for each employee as from time to time the plaintiff trustees shall determine is appropriate. The agreement states in clear and concise language not subject to any ambiguity that the employers obligation to the employee for pension benefits is ended when he pays the appropriate contribution into the fund. In no way does the employer under the structure of this agreement promise the employee a defined pension benefit. Rather, it is clear that he only promises that he will pay into the fund each pay period the contribution that is prescribed by the trustees and that his obligation to the fund is then ended.

In negotiating a collective bargaining agreement there is the possibility that a union could make a demand upon an employer to extend to the employee a defined pension benefit, but such has not been done in the contract under review. In the negotiations that attended this agreement the employer demanded that his obligation be ended once he made a contribution to the individual account of the employee and the union accepted the provision. To interpret this carefully constructed agreement as not coming within the exceptions of Section 1002(34) is to force upon the employer a greater obligation and liability than he had agreed to in his contract.

Defendant argues strenuously that plaintiffs' plan is covered by the insurance provisions of EIRSA because it is not a true "individual account plan" as defined by Section 1002(34). That section defines an individual account plan as a plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account. Defendant states that because the contributions of the employer to the individual's account is not maintained precisely like the concept of one's savings account in a bank, but instead the money is pooled by the trustees for investment purposes, and because of the computerized method employed by the trustees in reckoning the accumulated amounts contributed to the individual's account from time to time, this destroys proper characterization of the plan as an "individual account plan" or "defined contribution plan." The legislation which must guide the consideration of this dispute is lengthy and complex and represents draftsmanship that is confusing, to say the least, but a fair reading of the Act and the legislative history which preceded the enactment leads me to conclude that the structure of plaintiffs' plan properly comes within the exceptions of Section 1002 and should be characterized as an individual account plan.

Defendant claims that plaintiffs' plan does not come within Section 1002(34) because an "individual account plan" is one which provides for an individual account for each participant and for benefits based *solely* upon the amount contributed to the participant's account, and any income, expenses, gains or losses, and any forfeitures of accounts of other participants which may be allocated to each participant's account. Defendant argues that in the instant plan, benefits are not based solely upon the amount contributed to each participant's account because a part of the retirement benefit is based on past service. The parties stipulate that a participant is entitled

to a pension benefit which is determined by multiplying his "Prior Service Credits" by the current "Pension Factor." An employee earns one Prior Service Credit (up to 20) for each year of covered service in the industry prior to the establishment of the plan by the 1960 agreement.

Moreover, defendant argues, the plan provides for a monthly benefit determined by multiplying each "Pension Credit" by the appropriate "Pension Factor." A "Pension Credit" is earned whenever a participant works a given number of hours. The retirement benefits payable to a participant are based directly upon the number of hours worked by the employee and the applicable rate of contributions as reflected in his accumulated Pension Credits, as well as Prior Service Credits.

Moreover, PBGC argues that there is another reason for concluding plaintiffs' plan to be a covered plan. Section 4021(c)(1) of the Act, 29 U.S.C. § 1321(c)(1) provides as follows:

> "For purposes of subsection (b)(1) of this section, the term 'individual account plan' does not include a plan under which a fixed benefit is promised if the employer or his representative participated in the determination of that benefit."

Defendant argues that employer representatives participated in the determination of the benefit in plaintiffs' plan.

As I see it, the employer is signatory to an agreement which sets up a joint labor-management trust which has a Board of Trustees. The Trust binds the employer to pay a stated amount to the Trust for each employee covered by the collective bargaining agreement. The trustees are the ones who made a determination of the benefits, and this scheme includes no such participation on the part of the employer as is intended in Section 4021(c)(1) of the Act.

I conclude that plaintiffs' plan is a defined contribution plan under which no fixed benefit is promised; that it comes within the exception stated in 29 U.S.C. § 1321(b)(1) and that plaintiffs are entitled to summary judgment. The Court further

finds that defendant should be required to return to plaintiff the sum of $12,043 plus interest thereon from the date said sum was paid to defendant and that defendant, its agents, employees and representatives are enjoined from acting in any manner inconsistent with the judgment of this Court as set forth in this memorandum which, pursuant to Rule 52(a) FRCP shall take the place of findings of fact and conclusions of law.